BURLINGIM (ARROWSMITH v.). See Case No. 563.

BURLINGIN (ANOWEURTH v.). See Case No. 478.

BURLINGTON (GUERNSEY v.). See Case No. 5,855.

BURLINGTON (UNITED STATES ex rel. LEARNED v.). See Case No. 14,687.

BURLINGTON & M. R. CO. (HUNNEWELL v.). See Case No. 6,879.

BURLINGTON & M. R. Co. (UNITED STATES v.). See Case No. 14,688.

---

## Case No. 2,169.

### BURLINGTON & S. RY. CO. v. PUTNAM COUNTY.

[5 Dill. 289.][1]

Circuit Court, W. D. Missouri. 1879.

TAXATION OF FOREIGN RAILROAD COMPANIES EXTENDING THEIR ROADS INTO MISSOURI—THE ACT OF MARCH 24TH, 1870, OF THE STATE OF MISSOURI CONSTRUED — CONSOLIDATION—PURCHASE.

1. Under the legislation of the state of Missouri applicable to above-mentioned railroad company (an Iowa corporation which had extended its road into Missouri in the manner set forth in the opinion), it is liable to be taxed in Missouri upon its road and property therein situate.

2. It is not exempt from taxation on the ground of consolidation with or purchase of certain Missouri railroads.

In equity. The Farmers' Loan and Trust Company filed a bill in this court against the Burlington and Southwestern Railway Company, to foreclose a mortgage which it held on its property situate in the counties of Putnam, Sullivan, and Linn, in the state of Missouri. Pending the proceedings, the defendant counties undertook to collect of the Burlington and Southwestern Railway Company taxes assessed against the same in the several counties named. Whereupon the receiver having in charge the property of said Burlington and Southwestern Railway Company filed what he termed an intervening petition, seeking thereby to restrain the defendant counties from collecting the taxes. By stipulation between the parties, this so-called intervening petition is to be treated as an original bill by the Burlington and Southwestern Railway Company against

---

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

the defendant counties of Putnam, Sullivan, and Linn.

Mr. Hatfield, for plaintiff.

Messrs. Eubanks, Barnett, Smith, and Easley & Mullins, for defendant counties.

Before DILLON, Circuit Judge, and KREKEL, District Judge.

KREKEL, District Judge. The plaintiff is a corporation organized under the laws of Iowa, and its object, as stated in the 4th article of its incorporation, is to locate, construct, maintain, and operate a railroad from the city of Burlington, Iowa, in a southwestern direction, via Fort Madison, in Lee county, and Farmington, in Van Buren county, to a point on the state line on the most practicable route from Moulton, in Appanoose county, Iowa, to Unionville, in Putnam county, Missouri; thence, by way of Unionville, on the most practicable route to the city of St. Joseph, in the county of Buchanan, in the state of Missouri, and to such other points in the state of Missouri or Kansas as may be determined by the board of directors.

The Burlington and Southwestern Railway Company, on the 18th day of February, 1870, consolidated with the Iowa and Missouri State Line Railroad Company (another Iowa corporation), the consolidated company retaining the name of the Burlington and Southwestern Railway Company. In the 4th article of the consolidated company, the object of the incorporation is stated to be the construction of a railroad from the city of Burlington, Iowa, in a southwestern direction, via Farmington, in Van Buren county, to a point on the state line at or near Pleasant Plains, in the county of Decatur, in the state of Iowa; and from thence on the most practicable route through the state of Missouri to the town of Rulo, in the state of Nebraska; thence through Nebraska and Kansas to the town of Sheridan, on the Kansas Pacific Railroad. It would seem from this that the original project to construct the road by way of Unionville, in Putnam county, to St. Joseph, Missouri, as indicated in the original act of incorporation of the Burlington and Southwestern Railway, was abandoned by the consolidated company, as, under the last project, the road is to strike the state line of Missouri in Decatur county, Iowa—a county west of Unionville, in Putnam county.

A company known as the St. Joseph and Iowa Railroad Company was incorporated in Missouri, under a charter dated January 22d, 1857. In the 3d section of this charter the object of the company is stated to be the construction of a railroad from the city of St. Joseph in the county of Buchanan, to such point on the boundary line of the state of Iowa, and into said state, as the board may select. We have no indication in the charter as to the location of the road, except what may

be inferred from the residence of the corporators who are to constitute the first board of directors. They resided in the counties of Buchanan, De Kalb, Andrew, Gentry, Daviess, Harrison, and Mercer, the last county named being on the state line. Assuming that Mercer county was to be the point at which the St. Joseph and Iowa Railroad was to strike the Iowa state line, and, as seen, the new line of the consolidated Burlington and Southwestern Railway Company was to cross the Missouri state line in Decatur county, Iowa, we have the line of the proposed roads meeting; for Decatur county, in Iowa, and Mercer county, in Missouri, are adjoining each other on the state line between Iowa and Missouri. This may account for the change of line on the part of the consolidated Burlington and Southwestern Railway Company, and the dropping of St. Joseph as a point, for if the St. Joseph and Iowa Railroad Company build a road from St. Joseph to the Iowa state line in Mercer county, the consolidated company, building to the state line in Decatur county, would thus obtain a connection with St. Joseph.

The St. Joseph and Iowa Railroad Company secured, by one of its charter provisions, all the privileges and immunities granted to the Hannibal and St. Joseph Railroad Company. By the charter of the latter company, it had secured all the privileges granted to the Louisiana and Columbia Railroad Company. The stock of this last (the Louisiana and Columbia Railroad Company) was, by the 24th section of its charter, exempted "from all state and county taxes."

It is claimed by plaintiff, the Burlington and Southwestern Railway Company, that, by virtue of its purchase and consolidation with the St. Joseph and Iowa Railroad Company, it has obtained for its Linneus branch exemption from taxation; and that, therefore, the counties of Putnam, Sullivan, and Linn, through which the Linneus branch runs, cannot impose taxes thereon.

In order to determine this, it becomes necessary to ascertain what rights were acquired by the Burlington and Southwestern Railway Company in its purchase and consolidation of and with the St. Joseph and Iowa Railroad Company. So far as the testimony in the case shows, the St. Joseph and Iowa Railroad Company never located or commenced the construction of any road under its charter. This being the case, the question arises whether, in that condition, it could avail itself of the so-called branch act of March 21st, 1868, which provides that "any railroad company in this state authorized by law to build branches, and wishing to avail themselves of the provisions of this act, shall, by its board of directors, pass and cause to be entered upon its records a resolution setting forth such desire, and designating the name under which the branch

shall be built, its point of intersection with its main line, and the general course." It would seem that, so long as a company has not located its main line, it cannot, in the very nature of things, establish a branch; for how can it name the intersection with the main line when no main line exists? It may be that the St. Joseph and Iowa Railroad Company had in fact located its main line before it undertook to establish "the central north branch of the St. Joseph and Iowa Railroad Company," but there is no evidence in the case showing it.

If, then, the St. Joseph and Iowa Railroad Company had no legally established branch, the Burlington and Southwestern Railway Company could not acquire rights in such under its purchase and consolidation of and with the St. Joseph and Iowa Railroad Company. So far as the testimony in the case shows, the St. Joseph and Iowa Railroad Company did nothing but make the best of its charter privileges, and even of such as it might have acquired under its rights to establish branch roads, had it put itself in a condition to establish branches. The exemption from taxation is claimed by plaintiff on the assumption of a legally established branch on the part of the St. Joseph and Iowa Railroad Company prior to the sale and purchase, and no such branch having been established, it cannot maintain its claim.

But assuming a branch road to have been established, can plaintiff claim exemption of taxation under the facts and circumstances shown at the trial? At the time of the supposed establishment of the central north branch of the St. Joseph and Iowa Railroad, there existed, and had existed for some time, a railroad company, organized under the general laws of the state, known as the North Missouri Central Railroad Company, engaged in the building of a railroad from Linneus, in Linn county, to Laclede, on the Hannibal and St. Joseph Railroad. This company extended the line of its road north through the counties of Linn. Putnam, and Sullivan. It had expended upwards of $80,-000, mainly in the building of the road south from Linneus, but had made and paid for surveys north from Linneus on the line of the extension. While engaged in the building of the road spoken of, the company sold and conveyed its property, rights, and franchises to the St. Joseph and Iowa Railroad Company. This company afterwards sold all its property, rights, and franchises, as before stated, to the Burlington and Southwestern Railway Company, which built and is now operating its road upon a portion of the line located and partly constructed by the North Missouri Central Railroad. It is claimed by the Burlington and Southwestern Railway Company that, by virtue of the purchase which the St. Joseph and Iowa Railroad Company made of the North Missouri Central Railroad, the North Missouri

Central Railroad Company was extinguished, and that they built their road south from Unionville under and upon the location of the branch established by the St. Joseph and Iowa Railroad Company, whose rights, including the branch, they had acquired.

Let us see. We find the North Missouri Central Railroad Company engaged in building a railroad under the general law of the state, having and claiming no exemption from taxation. Another company (assuming such company to have had exemption from taxation) establishes a branch road over the same territory, and, after having done so, becomes the purchaser of the road in course of construction—can it, after completing the same, transfer its exemption to the road purchased, and thus escape taxation? It certainly cannot. The Burlington and Southwestern Railway Company, by its purchase of the St. Joseph and Iowa Railroad, including the North Missouri Central Railroad, acquired the rights and privileges of the North Missouri Central Railroad Company, of part of which it availed itself. By so doing it subjected itself to the obligations and liabilities the North Missouri Central Railroad Company was under, among them the payment of taxes. The Burlington and Southwestern Railway Company, by locating its road over the already established line of the North Missouri Central Railroad, and availing itself of the work in the way of construction already done thereon, lost its claim to exemption, if it had such. It voluntarily mixed its own property claimed to be exempt with property undoubtedly subject to taxation. It therefore lost, or abandoned, all right to insist on exemption, even if it had such a right. If it had not purchased the North Missouri Central Railroad, and built, as claimed, its independent Linneus branch, that branch might have had a competitor in the road purchased, which the law favors rather than discourages.

So far as consolidations of railroads in Missouri are concerned, the act of March 24th, 1870, prohibits them when done for the purpose of avoiding competition, and provides that "It shall not be lawful for roads to consolidate, in whole or in part, when by so doing it will deprive the public of the benefit of competition between said roads;" and further declares all such consolidations void, and gives parties injured by such consolidations the right to sue for damages.

The right of exemption in this case is claimed "as the successor of and owner by purchase and consolidation of the property, rights, privileges, and franchises of the St. Joseph and Iowa Railroad Company." If claimed by consolidation, there is scarcely room for doubt as to the liability of the consolidated Linneus branch for taxes. Respecting the claim for exemption on account of both purchase and consolidation made in the bill, it may be said there is nothing in the testimony from which it could be in-

ferred that consolidation was intended, and hence no stress is laid in arriving at the result on what is said in the pleading about consolidation.

The conclusions arrived at are: 1. That the St. Joseph and Iowa Railroad Company, having failed to locate its main line, could not establish a branch, and that the Burlington and Southwestern Railway Company, by its purchase of the St. Joseph and Iowa Railroad, acquired no right dependent on the existence of a supposed branch.

2. That if a location of a main line of road had been made by the St. Joseph and Iowa Railroad Company, and said company, after the establishing of the branch road, purchased the North Missouri Central Railroad, a railroad subject to taxation, any exemption which might have been claimed for the branch road cannot be made available to avoid liability for taxation of the purchased road.

3. That the Burlington and Southwestern Railway Company acquired no greater right by the purchase of the St. Joseph and Iowa Railroad than that company had itself, and that by the location and construction of its Linneus branch over the line of the North Missouri Central Railroad it lost any right it might have had to a claim of exemption if it had constructed an entire independent branch line.

For these reasons plaintiff's bill is dismissed, and the temporary injunction dissolved.

DILLON, Circuit Judge. I concur in the result reached by my Brother Krekel. I have no doubt that the Burlington company is liable to taxation upon its road and property in the state of Missouri. Without examining or questioning the grounds stated in the foregoing opinion, I place my judgment upon the provisions of section 2 of the act of the general assembly of the state of Missouri approved March 24th, 1870.

The Burlington company (an Iowa corporation) acquired its rights in Missouri under the act of the legislature of March 24th, 1870. It must take those rights cum onere. Those rights were acquired and are held under this act, which expressly provides that "such part of its railroad as is within this state shall be subject to taxation." The 2d section of the above-named act, so far as applicable to the question here presented, is as follows: "Any railroad company organized in pursuance of the laws of this or any other state, or of the United States, may lease or purchase all or any part of a railroad, with all of its privileges, rights, franchises, real estate, and other property, the whole or a part of which is in this state, and constructed, owned, or leased by any other company, if the lines of the road or roads of said companies are continuous or connected at a point either within or without this state, upon such terms as may be agreed upon between said companies respectively; or any railroad company duly incorporated and existing under the laws of an adjoining state of the United States may extend, construct, maintain, and operate its railroad into and through this state, and for that purpose shall possess and exercise all the rights, powers, and privileges conferred by the general laws of this state upon railroad corporations organized thereunder, and shall be subject to all the duties, liabilities, and provisions of the laws of this state concerning railroad corporations as fully as if incorporated in this state: provided, that no such aid shall be furnished, nor any purchase, lease, sub-letting, or arrangements perfected, until a meeting of the stockholders of said company or companies of this state, party or parties to such agreement, whereby a railroad in this state may be aided, purchased, leased, sub-let, or affected by such arrangement, shall have been called by the directors thereof, at such time and place and in such manner as they shall designate, and the holders of a majority of the stock of such company, in person or by proxy, shall have assented thereto, or until the holders of a majority of the stock of such company shall have assented thereto in writing, and a certificate thereof, signed by the president and secretary of said company or companies, shall have been filed in the office of the secretary of state; and provided, further, that if a railroad company of another state shall lease a railroad, the whole or a part of which is in this state, or make arrangements for operating the same as provided in this act, or shall extend its railroad into this state or through this state, such part of said railroad as is within this state shall be subject to taxation, and shall be subject to all regulations and provisions of law governing railroads in this state; and a corporation in this state leasing its road to a corporation of another state shall remain liable as if it operated the road itself; and a corporation of another state being the lessee of a railroad in this state shall likewise be held liable for the violation of any of the laws of this state, and may sue and be sued, in all cases and for the same causes, and in the same manner, as a corporation of this state might sue or be sued, if operating its own road; but a satisfaction of any claim or judgment by either of said corporations shall discharge the other; and a corporation of another state being the lessee, as aforesaid, or extending its railroad, as aforesaid, into or through this state, shall establish and maintain an office or offices in this state, at some point or points on the line of the road so leased or constructed and operated, at which legal process and notice may be served as upon railroad corporations of this state."

The true construction of this act (section 2) is that, if the foreign railroad company comes into Missouri by virtue of the authority therein conferred, and either extends

its own road into this state, or leases, or operates, or purchases a road in this state, it shall do so only on condition of being subject to taxation. The word "purchase," it is true, is not used in this particular clause, but it cannot be supposed, looking at the whole section and its object, that the legislature meant to say to a foreign corporation, if you lease a road which is exempt from taxation, you must pay taxes, or if you arrange to operate such a road, you must pay taxes, but if you purchase such a road, you need not pay taxes.

Bill dismissed.